Filed 8/17/20  Lavitt v. Goodwill Retail Industries CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BRENT LAVITT et al., | B278675 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC537429) |
| v. | |
| GOODWILL RETAIL INDUSTRIES et al., | |
| Defendants and Respondents; | |
| JUAN ARIAS et al., | |
| Interveners and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lisa Hart Cole, Judge.  Affirmed.

Matern Law Group, Matthew J. Matern, Joshua D. Boxer, Roy K. Suh, Kiran Prasad, and Tagore O. Subramaniam for Intervener and Appellant Juan Arias.

David Yeremian & Associates and David Yeremian for Intervener and Appellant Maria Rina Clemente.

RGLAWYERS, Solomon E. Gresen; Benedon & Serlin, Douglas G. Benedon, and Judith E. Posner for Plaintiffs and Respondents.

Ogletree, Deakins, Nash, Smoak & Stewart, Catherine L. Hazany, and Lyne A. Richardson for Defendants and Respondents.

_____

## INTRODUCTION

Interveners Juan Arias and Maria Rina Clemente appeal from the judgment entered after the trial court approved a settlement resolving five wage and hour class actions against Goodwill Retail Services and Goodwill Industries of Southern California (collectively, Goodwill).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Goodwill Employees File Wage and Hour Class*
       *Actions Against Their Employer*

In 2013 and 2014 employees of Goodwill filed five subsequently related class actions alleging Goodwill committed various wage and hour violations.  Two of those lawsuits, *Diaz v. Goodwill Retail Services* and *Alvarado v. Goodwill Industries of Southern California*, were on behalf of current store managers who alleged Goodwill had improperly classified them as exempt employees.  Two of the other lawsuits, *Clemente v. Goodwill Industries of Southern California* and *Arias v. Goodwill*

2

*Industries of Southern California*, were on behalf of current and former nonexempt employees.

This action, the fifth, by Brent Lavitt on behalf of exempt employees and Gamal Adams on behalf of nonexempt employees, sought damages, penalties under the Private Attorneys General Act (PAGA) (Lab. Code, § 2698 et seq.), and relief under the unfair competition law (Bus. & Prof. Code, § 17200). This action was the only one of the five lawsuits to assert claims on behalf of both exempt and nonexempt employees, and it was the only one asserting a claim for Goodwill's alleged "'failure to recalculate overtime and double time after nondiscretionary bonus'" payments.

B. *The Court in the* Alvarado *Action Denies a Motion for Class Certification*

In August 2014 the plaintiffs in the *Alvarado* action moved to certify the action as a class action and sought to be the class representatives for several types of retail store managers whom Goodwill had allegedly misclassified as exempt employees. The court found that the proposed class included managers in various types of business environments with different job functions, that the plaintiffs failed to show the managers performed the same job tasks, and that the defendants showed there were significant differences in the positions, work environments, and tasks of the proposed class members. The court in the *Alvarado* action denied the motion for class certification, finding common questions of law or fact did not predominate.

C.     *The Parties in This Action Reach a Settlement*
       *and Move for Preliminary Approval*

In March 2015 Lavitt, Adams, and Goodwill jointly moved for an order preliminarily approving a proposed settlement of the class claims and conditionally certifying settlement classes. Under the proposed settlement, Goodwill agreed to pay $4,200,000 in cash and provide $300,000 in merchandise vouchers to all 10,588 California Goodwill hourly employees during the class period whom Goodwill had designated as nonexempt from payment for overtime (the nonexempt class) and to all 216 California employees whom Goodwill had designated as exempt from payment for overtime (the exempt class). The settlement consisted of $1,195,608 for nonexempt class members and $286,566 for exempt class members for alleged missed meal and rest breaks and associated unpaid or underpaid penalties; $1,858,406 for nonexempt class members and $402,849 for exempt class members for alleged underpayment of wages relating to overtime or "off the clock" work and associated unpaid or underpaid penalties; $6,507 for nonexempt class members for alleged improper rounding time entries; $190,597 for 1,127 nonexempt class members "who were paid nondiscretionary bonuses allegedly without recalculating overtime/double time"; $127,407 for 858 nonexempt class members and 147 exempt class members for an alleged specific sales bonus underpayment; $162,060 for members of both classes (at $15 each) for alleged nonpayment of job-related expenses; $294,003 in cash and $5,997 in merchandise vouchers for members of both classes for various penalties allegedly owed for Labor Code violations; and $10,000 in PAGA penalties.

Counsel for Lavitt and Adams submitted a declaration explaining that settlement negotiations began in early 2014 when counsel spoke about the possibility of mediation and Goodwill indicated it was willing to resolve the unpaid and underpaid bonus claims. The parties engaged in informal discovery, and counsel for Lavitt and Adams received more than 2,500 documents, including Goodwill's policies, training manuals, internal memoranda, and retail store operational data, as well as the plaintiffs' personnel files, pay stubs, and other records. Goodwill also produced spreadsheets of payroll registers that contained approximately 350,000 line items with over 17 million data points representing every wage payment to the nonexempt class members between February 25, 2010 and January 2015 and every wage payment to the exempt class members between July 25, 2009 and January 2015. The data corresponded to the individual components of each wage payment during the class period, similar to information on pay stubs, and included information about regular time, overtime, and bonus payments. Counsel for Lavitt and Adams determined from this information the size of the two putative classes, the average wage for each class, the number of current and former employees, and the number of full time equivalent positions during the class period (2,242 for the nonexempt class, 83 for the exempt class). Counsel for Lavitt and Adams also deposed two persons designated by Goodwill as most qualified to testify about the payment of overtime, the calculation and payment of bonuses, meal and rest break policies, efforts to provide meal and rest breaks, and other issues in the litigation. Counsel for Lavitt and Adams also interviewed putative class members, reviewed declarations of

putative class members, and investigated Goodwill's financial, employment, and other publicly available information.

The parties advised the court they participated in a mediation with a retired judge in January 2015 and, after Goodwill produced additional data, a second session of the mediation. The parties explained, "At that time, upon a realistic and good faith review of the voluminous documentary and other evidence in this case, each side recognized the substantial risk of an adverse result as to some of the claims, and based upon the risk . . . agreed to settle all of the claims of the [e]xempt and [n]onexempt [c]lasses in this action, and have reduced their positions to writing" in the settlement agreement.

Counsel for Lavitt and Adams described in his declaration the method the parties used to value and resolve each category of claims. For some categories Goodwill agreed to pay the full amount of its potential exposure. For example, Goodwill agreed to pay 100 percent of the "failure to recalculate bonus" claim. Goodwill also agreed to pay each class member in both classes $15 for allegedly unreimbursed job related expenses, which was the average amount Lavitt and Adams estimated Goodwill owed. And Goodwill agreed to pay the nonexempt class members $.01 per pay period for allegedly improper rounding, which was how the plaintiffs valued the rounding claim.

The parties resolved other categories of claims by compromise, in light of the potential exposure and litigation risks. For example, counsel for Lavitt and Adams calculated Goodwill's exposure for the meal and rest period claims by assuming there was, on average, one missed or interrupted meal or rest break per week for each full time equivalent position (exempt and nonexempt) and multiplying that figure by the

6

average hourly rate for the class. Counsel estimated the total value of these claims was $5,607,511 for the nonexempt class and $487,103 for the exempt class. Goodwill denied its employees missed all or part of any of their meal or rest breaks. Goodwill also contended that, because the evidence regarding this category of claims was specific to each employee, individual issues predominated, and the court in this action, as the court had in the *Alvarado* action, would deny the plaintiff's motion for certification of this claim. In light of the risks the plaintiffs faced in certifying the class and the uncertainties the litigation was causing to Goodwill's business plans, the parties agreed through the mediation to allocate to these claims $1,195,608 for the nonexempt class and $286,566 for the exempt class as part of the settlement.

Counsel for Lavitt and Adams calculated Goodwill's exposure for the claims for unpaid overtime and off-the-clock work by assuming there was, on average, one unpaid hour of overtime or off-the-clock work per week per full time equivalent position (both exempt and nonexempt) and multiplying that figure by the average hourly rate for the class, to arrive at a total of $8,411,266 for the nonexempt class and $730,655 for the exempt class. Goodwill denied its employees worked overtime or off the clock. Goodwill also contended the court would deny class certification of these claims because the evidence of overtime and off-the-clock work was specific to each individual employee. The parties, taking into account "the risks inherent in certification" and the unsuccessful motion for class certification in *Alvarado*, agreed in the mediation to allocate to these claims $1,858,406 for the nonexempt class and $402,849 for the exempt class as part of the settlement.

7

D.  *Plaintiffs from the Other Class Actions Object to Preliminary Approval of the Settlement and Move To Intervene*

Arias, Clemente, and Gisela Diaz, plaintiffs in other class actions against Goodwill, opposed preliminary approval of the settlement and sought to intervene and conduct discovery. Arias, joined by Clemente, argued that the settling parties failed to conduct sufficient discovery, that counsel for Lavitt and Adams did not appear to have compared the time records of the class members with the payroll registers, and that the documents on which counsel for Lavitt and Adams relied did not include the necessary time records to perform such an analysis. Arias also argued that it was unclear whether counsel for Lavitt and Adams investigated whether Goodwill's rounding policy deprived the class members of overtime payments and that the settling parties did not sufficiently explain the basis for the amounts Goodwill would be paying under the settlement for nonpayment of job-related expenses and potential penalties. Finally, Arias argued that the settling parties provided "no verifiable data point(s) to substantiate [the] claim" the nonexempt class members clocked in and out for lunch and received a penalty payment for missed or shortened lunch periods. Arias observed that his records reflected he was not paid for missed, late, or short meal breaks, which suggested the settling parties were making misrepresentations to the court. Diaz also asserted there was a conflict of interest between the exempt and nonexempt employee classes.

Counsel for Lavitt and Adams defended his investigation and calculations and stated he compared the time card records of the plaintiffs to the payroll registers and found no discrepancies.

Counsel for Lavitt and Adams provided the court with a meal break waiver signed by Arias, which counsel suggested could explain why Arias may not have been paid for missed meal periods. Counsel also stated that, because only approximately 20 employees signed these waivers, Arias was not representative of the 10,000-member class and his records did not show there was anything wrong with the settlement. Counsel for Lavitt and Adams also advised the court his analysis of Goodwill's pay records indicated Goodwill had paid meal penalties for 31,870 disparate pay periods during the class period, which resulted in more than $750,000 in penalties.

E. *The Trial Court Grants the Motions To Intervene*

At a May 27, 2015 hearing the trial court stated it intended to allow the objecting parties to intervene "so that there is a clear procedural basis for the parties to be filing, in essence, opposition to the proposed settlement." Because there were two classes and two class representatives, the court emphasized it was important the settlement process was "completely transparent" so that the court, the attorneys, and the class representatives could fulfill their fiduciary obligations to the classes. While the court did not want "plaintiff versus plaintiff discovery in deposition practice," the court felt the parties needed "absolute transparency about whatever evidence, materials, documents, whatever [Goodwill] gave to the settling plaintiff[s], I think everybody should get to see, because then if the other plaintiff attorneys ever should have an argument that the settlement is not fair, for one reason or another, you know, everybody has the same cards . . . . So my tentative thinking is to allow intervention and order, essentially, the settling party to share any and all evidence of documents or

9

information that Goodwill provided to the . . . proposed settling party in connection with the action to the settlement."  The court also expressed concern about a possible conflict of interest between the two classes and the use of merchandise vouchers as part of the settlement.  The court stated that Arias's contention the court and the parties needed the time records to evaluate the settlement was "a fair point," and the court asked counsel for Lavitt and Adams how the objecting parties could "analyze the sufficiency of a meal break settlement if they don't have time records."

The court explored with the parties the feasibility and cost of Goodwill providing a representative sample of time record data for the interveners to analyze.  The court also suggested sending the class members a *Belaire-West*[1] notice to permit counsel to contact additional class members about meal periods.  Arias advocated for both a document production and a *Belaire-West* notice, and he offered to accept "a reasonable sample" of data for the nonexempt class.

The court ruled:  "Let's have the intervening plaintiffs and allow everybody to intervene just for purposes of the motion for preliminary and need of final approval.  So let's have the plaintiffs get together and create and serve the simplest, cheapest, most direct, efficient, etc., discovery plan that you can

---

[1]     *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554.  "'*Belaire-West* notice' refers to an opt-out notice sent to potential class members in representative actions.  The notice is designed to protect the privacy rights of third parties and allow the recipient to object in writing to prevent his or her information from being disclosed to the party seeking discovery." (*Nunez v. Nevell Group, Inc.* (2019) 35 Cal.App.5th 838, 844, fn. 1.)

think they have that would let you get, if nothing else, the clock in and clock out, or anything else you think is extremely critical to your ability to analyze the fairness of the settlement." The court stated Goodwill could consult its information technology department concerning the feasibility and cost and report back to the court. The court also asked the parties to submit additional briefs on the issue of a possible conflict of interest, requested more information about the rounding practice, and reiterated that the interveners were not permitted to conduct formal discovery but were only allowed to formulate "a demand of what you think you need to achieve transparency." The court granted the motion to intervene, and Goodwill and the settling plaintiffs gave the interveners deposition transcripts and other documents and information.

F.     *The Interveners Obtain Additional Information*

The parties prepared a joint statement describing the interveners' proposed discovery plan and appeared at a hearing on July 17, 2015. While the parties had resolved a number of issues, including the *Belaire-West* notice, they had not resolved the issue of what time records Goodwill would produce. Goodwill proposed that, because it would cost $24,000 to produce the information the interveners sought, the court require Goodwill to provide data for a sample of 100 or more class members selected by the interveners.

The court stated that $24,000 was "too much" and ruled that a 100-employee sample was sufficient. The court stated: "It seems to me that sampling with a hundred or more class members randomly selected by the interven[e]rs gives you enough data to see what's happening and to assess whether

11

there's an issue or not. And that seems to be something of an expense level that Goodwill can live with." The court also asked Goodwill to demonstrate by expert declaration that a sample of 100 class members' records was statistically significant and gave the interveners permission to advise the court if their expert believed such a sampling was not sufficient. The court also approved the stipulated *Belaire-West* order for pre-certification notice to the putative class members.

Goodwill subsequently submitted a declaration from a statistical expert opining that a sample of 100 employees was sufficient to evaluate Goodwill's time rounding procedures. On September 11, 2015 the interveners gave Goodwill a randomly selected sample of 100 employee identification numbers for the purpose of obtaining the workhour and compensation records of a sample of the nonexempt class.

In advance of an October 2015 status conference, the interveners asked the court not to set a briefing schedule for the motion for preliminary approval of the proposed settlement because they needed the putative class members' contact information and the sample of the records before they could proceed. The settling plaintiffs argued the interveners had not timely proceeded with the informal discovery the court had ordered in July. They complained that the interveners had not given the court's signed order to the claims administrator to use in sending the *Belaire-West* notices and that they had taken two months to provide Goodwill with the list of employee identification numbers for the sample. The settling parties argued that the interveners were more interested in delaying and obstructing the settlement than in determining whether the settlement was fair and reasonable and that the court should set

12

the hearing on the motion for preliminary approval as soon as possible. The trial court agreed the interveners were "moving at a slow pace" and set the hearing on the motion for preliminary approval for January 8, 2016. On October 22, 2015 Goodwill gave the interveners the sampled time records for the 100 nonexempt employees the interveners had selected.

G. *The Trial Court Gives the Settlement Preliminary Approval*

Arias and Clemente opposed the motion for preliminary approval,[2] continuing to maintain the record did "not contain sufficient information to allow the [c]ourt to determine whether the proposed settlement is within the 'ballpark of reasonableness.'" They claimed that the investigation by Lavitt and Adams was inadequate and that Lavitt and Adams had obstructed the interveners' efforts to obtain information. Arias and Clemente also argued the representation of two classes by the same counsel created a conflict of interest.

Goodwill argued the settlement was a fair compromise that would provide substantial benefit to the class members. Goodwill observed that the interveners objected to the methodologies the parties used to reach the settlement but did not submit an expert declaration demonstrating any flaws in the settling parties' valuation of the claims, analysis of the data, or calculation of potential damages. Goodwill submitted the declaration of an economic expert stating that Goodwill's practice of time rounding was "neutral with respect to time worked and [did] not systematically deny employees pay." Lavitt and Adams similarly faulted the interveners for failing to submit evidence in support

---

[2]     Diaz withdrew her opposition in January 2016.

13

of their objections to the settlement. Lavitt and Adams described their investigation in detail, justified the allocation of the settlement proceeds between the classes, and explained the methodology and bases for the calculations the interveners were challenging.

At the hearing on the motion for preliminary approval, the court observed that the interveners, rather than demonstrating the settlement was inadequate, simply criticized Lavitt, Adams, and Goodwill. The court found that the parties reached the settlement through arms-length negotiation and that the investigation and discovery was sufficient for counsel to propose, and the court to evaluate, the settlement. The court also found that counsel for Lavitt and Adams was experienced in similar litigation and that the settlement was entitled to a presumption of fairness. The court preliminarily concluded the settlement was fair, reasonable, and adequate, considering the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed; and the stage of the proceedings and the experience and views of counsel. In response to the interveners' objections and arguments, the court observed that the settling parties had "persuasively argue[d] that the non-settling parties have been less than diligent prosecuting their own cases and have failed to submit analysis, evidence, or expert testimony substantiating their complaints that the proposed settlement is inadequate or unfair. The evidence submitted by the settling parties attesting to their diligent investigation and active negotiation of the settlement is likewise persuasive." The court granted the motion for preliminary approval of the settlement,

14

conditionally certified the classes, and appointed counsel for Lavitt and Adams as class counsel.

H.    *The Trial Court Gives the Settlement Final Approval*

After the court preliminarily approved the settlement, class counsel notified the class of the proposed settlement. Of the 11,531 potential class members, only 73 opted out, which yielded a 99.4 percent participation rate. No members of the class other than Arias and Clemente objected to the settlement.

Lavitt and Adams filed a motion for final approval of the settlement. As with the motion for final preliminary approval of the settlement, class counsel submitted a declaration detailing his efforts since 2014 to obtain discovery and resolve the case and explaining how he valued the claims and why the parties were settling those claims for the compromised amounts.

In their opposition to the motion for final settlement approval, Arias and Clemente, relying on an expert witness who analyzed employee time records produced by Goodwill, argued the settling parties had "grossly undervalued" the meal break claims of the nonexempt class. They claimed that the investigation by class counsel was inadequate, that the settlement was based on inadequate investigation, that class counsel misrepresented facts to the court, and that the court still lacked sufficient information to intelligently review the proposed settlement. Arias and Clemente also argued class counsel had a conflict of interest because they represented both classes (exempt and non-exempt employees). Arias and Clemente's expert witness analyzed the payroll records of 89 employees and determined that, of the 19,539 workdays encompassed by the

15

sample, there were 1,955 "unique meal violations"[3] and 1,911 workdays longer than six hours where a meal had been automatically deducted, but that Goodwill had only paid 287 meal premiums for the employees included in the sample. In response, counsel for Goodwill submitted a declaration stating that the analysis by Arias and Clemente's expert did not account for instances where a missed meal period was not a violation but the result of a shortened work day, voluntary early departure, meal waiver, or similar reason.

The trial court granted the motion for final settlement approval. The court ruled that the settlement was presumptively fair because the parties reached it through arms-length negotiation in several mediation sessions with a retired judge, that the parties conducted sufficient investigation and discovery to allow counsel to evaluate the settlement and the court to determine whether it was fair, that class counsel was experienced in class action litigation, and that only two of the 11,531 class members, far less than 10 percent of the class, objected to the settlement.

The court also found the settlement was fair, reasonable, and adequate. In making this finding, the court balanced the evidence of the strength of the plaintiffs' case and the value of the claims against the amount offered in settlement; the considerable risk, likely expense, and probable lengthy duration of the trial, as

---

[3] The expert found there was a meal break violation if the first meal break was "after the 5th hour" of work, the putative class member did not take a meal break but worked over 6 hours, a meal break was "less than 30 minutes," or the putative class member did not take a second meal break after working over 10 hours. The expert defined a "unique meal violation" as a violation "without overlapping multiple violations per day."

well as the likelihood that extended motion practice would prolong the litigation; the risk of class decertification; the amount of the settlement compared to the estimated value of the claims; the extensive discovery by Lavitt and Adams; the views and experience of counsel; and the reaction of the class members to the proposed settlement.

Responding to the arguments by Arias and Clemente that the settlement was based on an inadequate investigation, the court stated: "Based upon all the investigation undertaken by Class Counsel, and given the extraordinary procedural history of this action, in which Objectors were permitted to intervene for the limited purpose of conducting discovery, the Court finds these arguments lack merit and overrules them. Class Counsel has presented sufficient evidence of the investigation conducted, and the analysis of the damage claims based on such discovery. That Objectors' counsel may have conducted analysis that arrives at different damage models is insufficient to undermine the settlement; the result would be different if Objectors could demonstrate that Class Counsel had conducted insufficient investigation or analysis. Such is not the case. Moreover, a settlement 'need not obtain 100 percent of the damages sought in order to be fair and reasonable.'"

The court entered judgment on the settlement. Clemente and Arias timely appealed.

17

# DISCUSSION

A.    *Applicable Law and Standard of Review*

When the parties settle a class action, the trial court must approve the settlement after a hearing.  (Cal. Rules of Court, rule 3.769(a).)  At the final approval hearing, the "court must conduct an inquiry into the fairness of the proposed settlement."  (*Id.*, rule 3.769(g).)  "'The court must determine the settlement is fair, adequate, and reasonable.  [Citations.]  The purpose of the requirement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."'"  (*Luckey v. Superior Court* (2014) 228 Cal.App.4th 81, 93.)

"'"The trial court has broad discretion to determine whether the settlement is fair.  [Citation.]  It should consider relevant factors, such as the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. . . .  Due regard should be given to what is otherwise a private consensual agreement between the parties.  The inquiry 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'"'"  (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 581 (*Nordstrom*).)  "'Ultimately, the [trial] court's determination is

18

nothing more than an "amalgam of delicate balancing, gross approximations and rough justice."'" (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801.)

"We review the trial court's decision to approve a class action settlement in order to determine whether the trial court acted within its discretion. We do not reweigh the evidence or substitute our notions of fairness for the trial court's. [Citations.] "To merit reversal, both an abuse of discretion by the trial court must be 'clear' and the demonstration of it on appeal 'strong.'" [Citation.]' [Citation.] 'Our review of the trial court's approval of a class action settlement is limited in scope. We make no independent determination whether the settlement terms are "fair, adequate and reasonable," but only determine whether the trial court acted within its discretion.'" (*Nordstrom, supra,* 186 Cal.App.4th at p. 581.)

B.  *The Trial Court Did Not Abuse Its Discretion in Determining the Settlement Was Fair, Reasonable, and Adequate*

To evaluate the fairness of a class action settlement, the trial court must have "a record which allows 'an understanding of the amount that is in controversy and the realistic range of outcomes of the litigation.'" (*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 409 (*Munoz*); see *Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 801; *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 120 (*Kullar*).) Arias and Clemente argue the trial court abused its discretion because, as a result of the parties' misrepresentations, the trial court did not have sufficient information about "the nature and magnitude of the claims in

19

question" (*Kullar*, at p. 133) to determine whether the consideration Goodwill paid for the class member's release of the claims was reasonable. We conclude that, while class counsel made some troubling misrepresentations about the evidence in support of his valuation of the claims resolved by the settlement, the trial court still had sufficient information to evaluate the fairness of the settlement.

### 1. *Meal Breaks, Rest Breaks, and Off-the-clock Time*

Arias and Clemente argue the settling parties falsely asserted Goodwill had paid for 100 percent of the missed or interrupted meal break violations, when Goodwill in fact paid penalties for only a small fraction of those violations. Arias and Clemente's expert calculated that there were 1,955 "unique meal violations" during the workdays of a sample of 89 putative class members and that Goodwill paid only 287 meal premiums to these putative class members. The settling parties, however, did not tell the court Goodwill had fully compensated class members for all meal break violations. Although they told the court Goodwill's regular practice was to compensate nonexempt employees for meal breaks when there was a missed or impermissibly short meal break, the settlement recognized that both nonexempt and exempt employees had not been fully compensated for meal and rest break violations by valuing the meal and rest break claims, in addition to the $750,000 Goodwill already paid as meal premiums, at more than $5.6 million for nonexempt employees and $487,000 for exempt employees.

Arias and Clemente also argue counsel for Lavitt and Adams misrepresented his clients' deposition testimony to

substantiate his valuation of the meal break, rest break, and off-the-clock claims. To estimate the potential value of those claims, class counsel assumed that on average there was one off-the-clock hour of work per week and one missed or interrupted meal or rest break per week for each full time equivalent position. Class counsel defended this assumption by stating in his declaration Lavitt and Adams testified in their depositions that managers and other employees worked one or two off-the-clock hours per week at certain Goodwill stores and that they generally had one or two meal or rest breaks interrupted per week. Class counsel, however, misrepresented Lavitt's and Adams's testimony. Lavitt did not mention off-the-clock hours, meal breaks, or rest breaks in his deposition testimony. Adams did not mention off-the-clock hours either, but he did discuss meal and rest breaks. Class counsel's description of Adams's testimony about those claims, however, was far from accurate. While Adams testified he generally did not miss meal breaks, he stated he normally took only about four rest breaks per week (which meant he was missing approximately six rest breaks per week).

These misstatements, however, were not the only evidence of the value of the meal break, rest break, and off-the-clock claims. Class counsel's valuation of these claims was also based on his determination, from reviewing the payroll records, of the average hourly wage of the putative class members and the number of full time equivalent positions during the class period, a determination Arias and Clemente do not argue was inaccurate. Class counsel also stated in his declaration that he interviewed several putative class members and that his assumption class members generally missed or had interrupted one or two meal or rest breaks and worked one or two off-the-

clock hours per week was consistent with information he obtained from the class members.[4] And even though Adams's testimony suggests he missed six rest breaks per week instead of one or two, the trial court had discretion to find a settlement based on the latter figure was fair and reasonable. Finally, class counsel advised the court that the settlement value for these claims was "arrived at by way of contentious arms-length negotiations" with the mediator and that "the amount which was agreed-upon by the parties takes into account the risks inherent in [class] certification (particularly considering the fact that this court has already denied an identical motion for certification in the *Alvarado* case)." The court was within its discretion to credit class counsel's declaration on these points, even if his declaration contained some inaccurate information on other points. (See *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 884 [when reviewing attorney declarations, "a credibility determination is uniquely the province of the trial court"]; *In re Marriage of Calcaterra & Badakhsh (*2005) 132 Cal.App.4th 28, 36 [trial court sitting "as a trier of fact on a motion . . . 'may believe and accept as true only part of a witness's testimony and disregard the rest'"].)

---

[4]    Class counsel stated in his declaration that the information he received from putative class members on the meal and rest break and the off-the-clock claims was "in accord with" and "supported by" the deposition testimony of Lavitt and Adams. We interpret these statements to mean the information was consistent with and supported counsel's calculation that employees had one missed or interrupted meal or rest break per week and that they worked one or two off-the-clock hours per week.

22

There was also evidence Lavitt and Adams could have difficulty successfully certifying classes for the meal break and rest break claims. (See *Munoz*, *supra*, 186 Cal.App.4th at p. 411 [class action settlement was fair considering "the trial court's observations . . . that the class 'may not be certifiable,' [and] that 'it would be extremely difficult to try this case'"]; *Noll v. eBay, Inc.* (N.D.Cal. 2015) 309 F.R.D. 593, 606 [class action settlement was fair considering the defendant's contention that "individual issues in determining both liability and damages" would predominate]; *Bellinghausen v. Tractor Supply Co.* (N.D.Cal. 2015) 306 F.R.D. 245, 255-256 [wage and hour class action settlement was fair in light of the "significant risk that class action status might not be maintained" because of "'differences between the individual stores where different class members worked and/or differences in circumstances surrounding the end of each employee's employment'"].) Indeed, the court in the *Alvarado* action had already denied certification of a class of exempt employees raising similar claims, ruling individual issues predominated.

Adams's testimony also suggested that other nonexempt employees missed fewer rest breaks than he did and that he missed rest breaks for a different reason than other nonexempt employees may have missed rest breaks (to the extent they did). Adams, an assistant manager, testified he often missed rest breaks because he could not leave the sales floor if he was the manager on duty. On the other hand, one of the witnesses Goodwill designated as a person most qualified testified Goodwill trained all employees to take uninterrupted meal and rest breaks and required managers to ensure employees took proper meal and rest breaks. (See *Nordstrom*, *supra*, 186 Cal.App.4th at

23

p. 587 ["trial court did not abuse its discretion in determining that the class's" claims were "not strong, and therefore deciding the terms of the settlement were fair, adequate, and reasonable"]; *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 511 [purported intervenor's "failure to acknowledge the reality that the case might have been lost undermines his claim that the settlement is unfair"]; see also *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1051 [individual issues predominated in off-the-clock claims where "neither a common policy nor a common method of proof [was] apparent" and the plaintiff did not present "substantial evidence of a systematic company policy to pressure or require employees to work off-the-clock"].)

Finally, while Arias and Clemente objected to the fairness of the proposed settlement, they did not provide the trial court with a reasonable estimate of the value of the meal break, rest break, or off-the-clock claims—despite successfully moving to intervene and obtaining discovery. Class counsel's assumption that on average there was one meal or rest break violation per week for each full time equivalent position corresponded to a cumulative total of over 573,000 meal and rest break violations during the class period. While Arias and Clemente rely heavily on the declaration of their data analysis expert, their expert only suggested Goodwill often failed to pay a meal premium when there was a meal break violation. He did not analyze how frequently there were meal or rest break violations, nor did he suggest there was more than one violation per week for each full time equivalent position per week, as class counsel assumed.

To be sure, class counsel could have submitted better evidence to support his valuation of the claims, such as

24

declarations from class members stating how frequently they missed rest breaks or worked off the clock. But the trial court does not need evidence of "the maximum amount the plaintiff class could recover if it prevailed on all its claims." (*Munoz*, *supra*, 186 Cal.App.4th at p. 409; see *Sutter Health Uninsured Pricing Cases*, *supra*, 171 Cal.App.4th at p. 511 ["A trial court should *not* evaluate a proposed settlement 'against a hypothetical or speculative measure of what might have been achieved had plaintiffs prevailed at trial.'"]; *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 250 ["the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances"], disapproved on another ground in *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 269.) Nor does the law require the court to justify individually the amount the settling parties have allocated to each claim in a class action settlement. (See *Dunk v. Ford Motor Co.*, *supra*, 48 Cal.App.4th at p. 1801 [trial court must "'reach a reasoned judgment . . . that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned'"].) Here, the trial court had and considered "enough information about the nature and magnitude of the claims the parties were settling, as well as the impediments to recovery, to make an independent assessment of the reasonableness of the terms, and to "satisfy itself that the class settlement [was] within the 'ballpark' of reasonableness." (*Kullar*, *supra*, 168 Cal.App.4th at p. 133.)

## 2. *Rounding Policy*

Arias and Clemente argue class counsel lacked the necessary records to evaluate whether Goodwill's rounding policy, rather than being neutral, unfairly favored the employer. Goodwill's expert witness, however, compared actual time punch records and rounded time entries for 204,329 shifts involving 3,319 employees over 15 pay periods. She found that 51 percent of the shifts had rounded time totals that corresponded exactly with their actual time, 29 percent of shifts had rounded time totals greater than the actual time worked, and 20 percent of the shifts had rounded time totals less than the actual time worked. She concluded Goodwill's rounding practice was neutral with respect to time worked and did not systematically deny employees' wages for time they had worked. Although the court was not required to evaluate the rounding claims individually, the court had sufficient information to conclude the $3,507 the parties allocated to resolve the rounding claims was sufficient. (See *Kullar*, *supra*, 168 Cal.App.4th at p. 133; see, e.g., *Lopez v. Aerotek, Inc.* (C.D.Cal. Aug. 3, 2017, No. SACV14-00803-CJC (JCGx) [2017 WL 10434395, p. 5] [class action settlement approved where the settling defendant had argued that the plaintiffs' "rounding claims fail because '[the defendant's] rounding policies are both facially neutral and even-handed in practice, and that, over time, they do not deprive employees of compensation for time worked'"]; *McClean v. Health Systems, Inc.* (W.D.Mo. June 1, 2015, No. 6:11-CV-03037-DGK) [2015 WL 12426091, p. 4] [settlement providing the plaintiffs with "30% of the net time rounded away" was "quite reasonable," considering "the numerous impediments to recovery and the very real

26

possibility that these individuals will not recover anything absent a settlement"].)

### 3. *Release of Other Claims*

Finally, Arias and Clemente contend that the settlement summarily released various claims without analyzing the value of those claims[5] and that the trial court did not know the number of former employees in the class,[6] the value of their claims, or the amount of vacation time Goodwill may have owed them. The notice of the proposed class action settlement and final approval hearing disclosed the release of the claims. Arias and Clemente, who had already intervened in the action when the notice was sent, objected to the settlement on many grounds, but they did not object to the scope of the release of claims in their opposition

---

[5] The addendum to the settlement agreement provided: "The Class Released Claims include all such claims arising under the California Labor Code (including, but not limited to, sections . . . 200, 201, 202, 203, 204, 210, 218.5, 218.6, 223, 225.5, 226, 226.3, 226.6, 226.7, 227.3, 510, 512, 515, 558, 1174, 1174.2, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.2, 1198, 2802, 2698 and 2699, among other provisions of law); the wage orders of the California Industrial Welfare Commission; California Business and Professions Code section 17200 et seq.; and the California common law of contract."

[6] The assertion the court did not know the number of class members is not supported by the record, which demonstrates that the court was fully advised of the number of class members and the changes in class size over the course of the settlement approval period. In its final approval of the settlement, the court stated it had requested and received detailed information about the growth of the class.

to final approval of the settlement.  Arias and Clemente forfeited these issues by failing to raise them in the trial court. (See *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 59 [objector forfeited challenge to notice procedures by failing to raise the issue in the trial court]; see also *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 513 [""As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal""].)

### 4. *PAGA Penalties*

Arias and Clemente argue the trial court abused its discretion under *Kullar*, *supra*, 168 Cal.App.4th 116 in approving the settlement without analyzing the total potential PAGA penalties and providing a "cogent explanation" of why it approved the amount of the settlement allocated to PAGA penalties. Again, however, Arias and Clemente did not make this argument in their objections to the final approval of class settlement, thus forfeiting the argument.

Moreover, even if Arias and Clemente had preserved the argument, they have not shown the trial court abused its discretion in approving the settlement.  "PAGA settlements are subject to trial court review and approval, ensuring that any negotiated resolution is fair to those affected." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 549; see Lab. Code, § 2699, subd. (l).)[7]  But "neither the California legislature, nor the

---

[7]     At the time Lavitt and Adams filed this action, former Labor Code section 2699, subdivision (l), provided that "[t]he superior court shall review and approve any penalties sought as part of a proposed settlement agreement pursuant to [PAGA]."

28

California Supreme Court, nor the California Courts of Appeal, nor the [Labor and Workforce Development Agency] has provided any definitive answer" to the "vexing question" of what the appropriate standard is for approving the settlement of PAGA claims, whether they are brought as a class or a representative action. (*Flores v. Starwood Hotels & Resorts Worldwide* (C.D.Cal. 2017) 253 F.Supp.3d 1074, 1075; accord, *Haralson v. U.S. Aviation Servs. Corp.* (N.D.Cal. 2019) 383 F.Supp.3d 959, 971.) Rather than argue an articulable standard, Arias and Clemente simply argue the trial court did not undertake an analysis of the total potential PAGA penalties. That is not sufficient to show the court abused its discretion in approving the $10,000 allocation for PAGA penalties. (See *O'Connor v. Uber Technologies, Inc.* (N.D.Cal. 2016) 201 F.Supp.3d 1110, 1134 ["the purposes of PAGA may be concurrently fulfilled" by a settlement providing substantial monetary relief for the class because "a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers"]; see also *Shahbazian v. Fast Auto Loans, Inc.* (C.D.Cal. June 20, 2019) No. 2:18-cv-03076-ODW [2019 WL 8955420, p. 8] ["'where a settlement for a . . . class is robust, the statutory purposes of PAGA may be

_____

On June 27, 2016–while the motion for final approval of the settlement was pending—the Legislature amended Labor Code section 2699 to provide, in relevant part, "the superior court shall review and approve any settlement of any civil action filed pursuant to this part." (Lab. Code, § 2699, subd. (l)(2).) The parties do not address the effect of this amendment, if any, on the settlement.

29

fulfilled even with a relatively small award on the PAGA claim itself"'].)[8]

C. *The Trial Court Did Not Abuse Its Discretion in Finding the Settlement Was Not the Product of a Conflict of Interest, Collusion, or Inadequate Representation*

Arias and Clemente argue the trial court should not have approved the settlement and certified the classes because there was substantial evidence of a conflict of interest, collusion, and inadequate representation. These arguments lack merit.

---

[8] Arias and Clemente also refer in their opening brief to the provisions of the settlement agreement that required class members to opt out of the class by returning notarized forms by registered or certified mail and that gave class members coupons for Goodwill merchandise. The few and scattered references to these issues, however, are descriptions in the brief's statement of facts section of the parties' positions in the trial court and of the court's rulings; Arias and Clemente do not argue they are reasons the trial court erred in approving the settlement. (See *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 313 [appellant forfeits assertions made "without pertinent argument or an attempt to apply the law to the circumstances of [the] case"]; *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3 [court may decline to consider arguments "not set out under distinct headings" because, "'[a]lthough we address the issues raised in the headings, we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument'"].)

1.    *Collusion*

Arias and Clemente argue their exclusion from the settlement negotiations and discovery, as well as the settling parties' reliance on a mediation privilege, suggests the settlement was collusive. The negotiation of settlements, however, is typically not transparent, and "[t]his lack of transparency is reflected in the limited ability of objectors to obtain discovery regarding settlement negotiations. '"It is well established . . . that objectors are not entitled to discovery concerning settlement negotiations between the parties without evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process." [Citations.]' [Citation.] Ultimately, the key consideration for the trial court is the substantive fairness of the settlement terms, as well as the reasonableness of the fee award and any evidence of collusion, rather than the *transparency* of the process by which the terms of the settlement were accomplished." (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1122-1123.)

Arias and Clemente argue the trial court "abdicated its affirmative obligation to police the settlement for evidence of collusion." It is true the trial court "must be vigilant against fraud and collusion. The court is, in short, acting in a fiduciary capacity as guardian of the rights of absentee class members." (*Luckey v. Superior Court*, *supra*, 228 Cal.App.4th at p. 103.) Contrary to Arias and Clemente's argument, however, the record demonstrates the trial court evaluated the settlement for possible collusion; the court did not find any. At the preliminary approval stage, the trial court considered the claims by Arias and Clemente of collusion and unfairness. The court stated it was not persuaded the "failure to invite counsel in all pending cases to

31

participate in mediation or discovery is evidence of any unfairness. In the absence of a court order to the contrary, the Code of Civil Procedure does not require such invitations. Moreover, . . . the [interveners] have had opportunities to conduct discovery in their own cases. The various plaintiff[s'] attorneys were also free to (and have had plenty of time to) reach an agreement to cooperate with one another rather than compete with one another." The court stated that, because the various plaintiffs' attorneys were not cooperating, it was logical for Goodwill to negotiate a settlement with one set of attorneys, and it was "particularly reasonable for Goodwill to negotiate with counsel in this case because this is the only case asserting claims on behalf of both exempt and non-exempt employees. The failure to include all attorneys from all cases in the mediation is not evidence of improper collusion." Consistent with this analysis, at the hearing on the final approval of the proposed settlement, the trial court found there was "no evidence of fraud or collusion." (See *Nordstrom, supra*, 186 Cal.App.4th at p. 581 [trial court's inquiry """must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties"""].)

## 2. *Conflict of Interest*

Arias and Clemente argue that, without independent representation, Adams could not adequately represent the class of nonexempt employees. Arias and Clemente argue the trial court abused its discretion in certifying the classes and approving the settlement because there was a conflict of interest, although it is unclear whether they are asserting there was a conflict

between Lavitt and Adams, a conflict between Adams and the nonexempt class members on whose behalf he asserted claims, or both.

To the extent that Arias and Clemente are arguing there was a conflict of interest between Lavitt and Adams, they rely on cases concluding supervisors were not adequate representatives for the classes that included employees they supervised. (See, e.g., *Lampe v. Queen of the Valley Medical Center* (2018) 19 Cal.App.5th 832, 850 [putative class representative who was responsible for scheduling meal breaks for other employees was not an adequate meal-break-claim class representative where her interests were "'antagonistic to the remainder of the class'"]; *Hughes v. WinCo Foods* (C.D.Cal. Jan. 4, 2012) No. ED CV11-00644 JAK (OPx) [2012 WL 34483, p. 7] [denying certification of a class of supervisory and nonsupervisory employees where the "[p]laintiffs assign partial responsibility for labor law violations to their supervisors, and simultaneously seek to represent said supervisors"]; *Hadjavi v. CVS Pharmacy, Inc.* (C.D.Cal. July 25, 2011) No. CV 10-04886 SJO (RCx) [2011 WL 3240763, p. 6] [supervisory pharmacist who may have been partially responsible for the inability of other pharmacists to take meal breaks was not an appropriate representative for a class of all pharmacists, supervisory and nonsupervisory]; see also *Wagner v. Taylor* (D.C. Cir. 1987) 836 F.2d 578, 595 [in a race discrimination class action, a supervisor was not an appropriate representative for a class that included nonsupervisory personnel because, "[a]lthough each group shares the interest in freedom from discrimination, potential conflicts may and do arise within a class including both"].) Here, however, one class representative is not attempting to represent class members with whom he has a

33

potential or actual conflict of interest. Lavitt represents the exempt employees, and Adams represents the nonexempt employees. Courts routinely approve the division of a class into subclasses or, as here, separate classes, to resolve potential conflicts between groups of class members. (See *Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 697 ["where factual circumstances differ, or class members disagree as to the proper theory of liability, the trial judge, through resort to subclasses, intervention, and the like, may incorporate class differences into the litigation process and afford all members their due in deciding the proper outcome"]; *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 134, 137 [potential divergence of interest between two groups of employees arising out of a difference in the amount of time worked on a matter did not mean the class representatives could not represent the class because the creation of subclasses would allow the class representatives to represent both groups], disapproved on another ground in *Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 986, fn. 15; see also *Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 376 [in an employment class action, the court could resolve an apparent conflict between general managers and assistant managers by, among other things, creating a subclass for general managers].)

To the extent Arias and Clemente are arguing there was a conflict of interest between Adams and the members of the nonexempt class he represents, Arias and Clemente have not demonstrated there was such a conflict. They include in their opening brief a heading stating Adams "Could not Adequately Represent Interests of the Subordinate Nonexempt Employees Whose Rights He Violated," but they do not provide any citation

34

to the record, factual analysis, or legal explanation for this claimed conflict of interest. Therefore, they have forfeited the argument. (See *Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 634 [arguments not "supported with reasoned analysis or citations to evidence in the record" are forfeited]; *Taniguchi v. Restoration Homes LLC* (2019) 43 Cal.App.5th 478, 486, fn. 6 [arguments . . . not supported by meaningful analysis or citation to authority" are forfeited].)[9]

3.    *Adequacy of Class Counsel's Representation*

Arias and Clemente contend class counsel's representation was inadequate because counsel could not simultaneously represent the interests of the two classes. They argue class counsel should have been disqualified because counsel's loyalties were divided between clients and classes. While a conflict of interest may arise when an attorney's duty on behalf of one client obligates the attorney to take action prejudicial to the interests of another client (*Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 778), Arias and Clemente have not established class counsel's representation of both exempt and nonexempt employees divided counsel's loyalties or forced counsel to take any actions that benefitted one group of employees at the expense of the other. There is no categorical prohibition on class

_____

[9]    Arias and Clemente also assert the court should have ordered the settling parties to give notice to the class that Lavitt and Adams had a conflict of interest and that they signed a conflicts waiver allowing class counsel to represent both of them. Arias and Clemente, however, forfeited this assertion by not objecting to the settlement on this ground. In any event, as discussed, there was no conflict of interest.

35

counsel representing multiple classes or subclasses in which members receive different allocations of settlement funds. (See *Moore v. PetSmart, Inc.* (9th Cir. 2018) 728 Fed.Appx. 671, 673-674 [rejecting the contention that the same class counsel could not adequately represent two classes of employees in a wage and hour case and stating that, "[a]lthough the claims of one class purportedly are more valuable than the claims of another class, a difference in value of claims does not necessarily mean that there is a structural, or fundamental, conflict of interest requiring separate counsel"]; see also *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)* (9th Cir. 2000) 213 F.3d 454, 462-463 [approving a settlement where class counsel represented two groups of class members and each group received different percentages of the settlement and where all class members were damaged by the same underlying conduct].)

Arias and Clemente also assert "the record shows that the divided loyalties impacted the fairness of the agreement," arguing that members of the exempt class received a payment approximately 10 times greater than members of the nonexempt class and that "the court did not require proponents to explain" the differences in recovery. But, as discussed, the settling parties did explain the differences in allocations of the settlement between the classes. As class counsel explained, the allocations in the settlement to the meal break, rest break, and off-the-clock claims for both the exempt class and nonexempt class were based on the number of full time equivalent positions in each class and the average hourly wage of the members of each class. Moreover, where, as here, "class members essentially seek the same thing from the defendant and differ only with respect to the amount or value of their claims, absent vast differences or some other

36

evidence of unfairness, there is no fundamental conflict sufficient to defeat adequacy." (*Moore v. PetSmart, Inc.*, *supra*, 728 Fed.Appx. at p. 674.)

Citing *Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, Arias and Clemente argue class counsel could not represent both exempt and nonexempt employees. *Walker*, however, is distinguishable. In that case, which did not involve approval of a class action settlement, a law firm represented classes in two separate class actions against the same employer. In the first action, the employees contended that the employer's meal and rest break policies were inconsistent with California law and that the employer systematically failed to timely pay employees upon termination of their employment. (*Id*. at p. 1102.) In the second action, the employees alleged that the employer violated California law by failing to furnish final wage statements upon termination of their employment. (*Id*. at p. 1103.) The law firm was disqualified in the second action because the employer's expected litigation strategy in that action was to show that any failure to provide wage statements was an error by a store manager—and that manager was a member of the certified class in the first action. (*Id*. at pp. 1105, 1111.) Because it was highly likely the employer would call the manager to testify concerning wage statements in the second action, the law firm would be placed in the position of having to cross-examine its client in the first action to advance its litigation strategy in the second action. (*Id*. at p. 1105.) Therefore, the conflict between the class member in the first action and the interests of the class members of the second action was "practical and fundamental," not merely speculative or hypothetical. (*Id*. at pp. 1111-1112.) In contrast, Arias and Clemente did not demonstrate any actual conflict of

interest between the classes that would prevent concurrent representation.  Instead, they asserted without explanation that, because Lavitt supervised Adams, representation by the same counsel "raised the specter" of class counsel having to choose between cross-examining Lavitt or Adams to establish the other's claims.

    D.    *The Trial Court Did Not Place the Burden on the Interveners To Prove the Settlement Was Not Fair, Reasonable, and Adequate*

Finally, Arias and Clemente argue the trial court erred by placing the burden on them to show the proposed settlement was not fair, reasonable, and adequate, rather than fulfilling its obligation to scrutinize the proposed settlement.  The trial court did no such thing.  The court stated and understood the proponents of the settlement had that burden, and the court independently and objectively analyzed the evidence and circumstances surrounding the settlement.  While Arias and Clemente assert the court improperly shifted the burden to them when the court observed they were criticizing class counsel but failed to present evidence the settlement was inadequate, these comments reflected the court's conclusion that Arias and Clemente failed to rebut the settling parties' showing that the settlement was fair, reasonable, and adequate.  (See *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1166 [rejecting the contention the court placed the burden on the parties opposing the settlement where the record demonstrated the trial court "understood the settlement proponents had the burden of proof" and the class representatives

38

"'made a sufficient showing which [objectors] failed to adequately rebut'"].)

## DISPOSITION

The judgment is affirmed.  Lavitt and Adams are to recover their costs on appeal.


SEGAL, Acting P. J.


We concur:



FEUER, J.



DILLON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.